**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
AHMED A. ELNAGGAR,

       Plaintiff,        **23 Civ. 10850 (GS)**

    -against-         **OPINION & ORDER**

MERRICK GARLAND, in his
official capacity as Attorney General
of the United States, ALEJANDRO
MAYORKAS, in his official capacity
as Secretary of Homeland Security,
and UR MENDOZA JADDOU, in
her official capacity as Director of
USCIS,

       Defendants.
-----------------------------------------------------------------X
**GARY STEIN, United States Magistrate Judge:**

   Plaintiff Ahmed A. Elnaggar ("Plaintiff" or "Elnaggar") brings this action to compel the United States Government to adjudicate Elnaggar's application for a green card, which has been pending since May 2023.  Defendants have moved to dismiss the action for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth below, Defendants' motion to dismiss is **GRANTED** and this action is dismissed.

## BACKGROUND

### A. Plaintiff's Allegations

   The facts below, alleged in Plaintiff's First Amended Petition for Writ of Mandamus and Complaint for Declaratory and Injunctive Relief (Dkt. No. 17 ("First Amended Complaint" or "FAC")), are accepted as true for purposes of this motion.

*See Sheiner v. Mayorkas*, No. 21 Civ. 5272 (ER), 2023 WL 2691580, at *1 n.2 (S.D.N.Y. Mar. 29, 2023).

Elnaggar is a noncitizen who was granted asylum in the United States as of April 29, 2022.  (FAC ¶ 42).  Elnaggar resides in the Southern District of New York.  (*Id*. ¶ 25).  Defendants—the current U.S. Attorney General, Secretary of Homeland Security, and Director of the U.S. Citizenship & Immigration Service ("USCIS")—are responsible for administering and enforcing the immigration laws of the United States and are sued in their official capacities.  (*Id*. ¶¶ 28-30).

On or about May 12, 2023, Elnaggar submitted an application for lawful permanent residence on Form I-485 (commonly known as a green card application) to the USCIS.  (*Id*. ¶¶ 26, 43 & Ex. C).  He submitted all necessary information and evidence to support the application and paid all applicable fees, fulfilling all statutory and administrative requirements.  (*Id*. ¶¶ 11, 68).

Yet as of the date the FAC was filed, some 11 months later, USCIS had not made a final decision on Elnaggar's I-485 application.  (*Id*. ¶¶ 3, 70).  In fact, Elnaggar still had not been scheduled for an interview (*id*. ¶ 44), despite making numerous reasonable attempts to determine the reason for the delay (*id*. ¶ 45).

The delay in adjudicating Plaintiff's I-485 application "has placed a severe emotional and financial strain on the Plaintiff."  (*Id*. ¶ 4).  He has been prevented from visiting his ailing mother in Morocco and from reuniting with his wife and children, who are also in Morocco.  (*Id*.).

In addition, Elnaggar "has been unable to definitively plan for his future." (*Id.* ¶ 5).  In particular, it is Elnaggar's dream to join the U.S. Navy.  (*Id.* ¶¶ 5, 8, 46).  Only noncitizens who have a green card are eligible to enlist in the U.S. military, so Elnaggar must first receive his green card.  (*Id.* ¶ 6).  When the FAC was filed, Elnaggar was only four months away from reaching the Navy's age limit of 39.  (*Id.* ¶ 7).  The delay in adjudicating his application thus threatens to deprive him of his dream of joining the Navy.  (*Id.* ¶¶ 7-8, 46).

Based on these allegations, the FAC asserts two causes of action.  First, Elnaggar seeks mandamus relief pursuant to 28 U.S.C. § 1361, claiming that Defendants have violated a clear, nondiscretionary, and mandatory duty to adjudicate his I-485 application.  (*Id.* ¶¶ 56-63).  Second, Elnaggar seeks relief under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b) and 706(1) *et seq.*, claiming that Defendants have unreasonably delayed acting on his application in violation of their duties under the APA.  (*Id.* ¶¶ 64-72).

Elnaggar asks the Court, *inter alia*, to issue a writ of mandamus and/or an order pursuant to the APA directing Defendants to complete all steps necessary to adjudicate his I-485 application, including any necessary background checks and his interview, within 14 days.  (*Id.* at 14-15).

### B. Procedural History

Elnaggar filed his initial Petition for Writ of Mandamus and Complaint for Declaratory and Injunctive Relief on December 13, 2023.  (Dkt. No. 1 ("Complaint" or "Compl.")).  In addition to seeking relief based on the failure to adjudicate his I-

485 application, the original Complaint alleged that Defendants were unreasonably delaying a ruling on Elnaggar's separate application for a travel visa on Form I-131, which he also filed in May 2023.  (*Id.* ¶¶ 4-5, 11, 68 & Ex. A).  The Complaint alleged that the travel visa was necessary for Elnaggar to visit his ailing mother and reunite with his wife and children in Morocco.  (*Id.* ¶¶ 4, 6).

Defendants submitted a letter seeking a pre-motion conference in anticipation of a motion to dismiss.  (Dkt. No. 13).  In that letter, Defendants stated that USCIS approved Plaintiff's requested travel visa on February 1, 2024, and that Plaintiff's claim based on the failure to act on his travel visa was therefore moot.  (*Id.* at 1 & Ex. 1).  In response, Elnaggar acknowledged that he had received his travel visa and stated he had no objection to dismissal of his clam related to his I-131 application.  (Dkt. No. 16 at 1).  At a conference with the Court on April 9, 2024, it was agreed that Elnaggar would file an amended complaint withdrawing his allegations related to the I-131 application, and adding allegations related to how USCIS's failure to act on his I-485 application was depriving him of the ability to enlist in the U.S. Navy.  (*See* Dkt. Entry dated Apr. 9, 2024).

Elnaggar filed his First Amended Complaint on April 16, 2024.  (Dkt. No. 17). Defendants filed their motion to dismiss and an accompanying memorandum of law on May 15, 2024.  (Dkt. Nos. 18, 19 ("Def. Br.")).  Elnaggar filed his brief in opposition on June 6, 2024 (Dkt. No. 21 ("Pl. Br.")), to which the Government replied on June 17, 2024 (Dkt. No. 22 ("Reply")).

## LEGAL STANDARDS

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. The factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (complaint must raise "more than a sheer possibility that a defendant has acted unlawfully").

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept[] all factual allegations in the complaint as true" and "draw[] all reasonable inferences in the plaintiff's favor." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (citation omitted). Courts need not, however, consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Determining whether a plausible claim has been pled is "a context-specific task" that requires the court "to draw on its judicial experience and common sense."

*Iqbal*, 556 U.S. at 679; *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d

Cir. 2023).  However, "Rule 12(b)(6) does not countenance . . . dismissals based on a

judge's disbelief of a complaint's factual allegations." *Twombly*, 550 U.S. at 556

(citation omitted).  "[T]he court's task is to assess the legal feasibility of the

complaint; it is not to assess the weight of the evidence that might be offered on

either side." *Lynch v. City of N.Y.*, 952 F.3d 67, 75 (2d Cir. 2020).

## DISCUSSION

In his First Amended Complaint, Elnaggar contends that USCIS's 11-month

delay in adjudicating his I-485 application is unreasonable and in violation of law.

(FAC ¶¶ 45-48).  In support, Plaintiff cites the provision of the Immigration and

Naturalization Act ("INA") expressing "the sense of Congress that the processing of

an immigration benefit application should be completed not later than 180 days

after the initial filing of the application[.]"  8 U.S.C. § 1571(b); *see* FAC ¶ 49.

Plaintiff further notes that "[t]he APA requires agencies to conclude matters

presented to them 'within a reasonable time,'" FAC ¶ 54 (quoting 5 U.S.C. § 555(b)),

and authorizes courts to "compel agency action unlawfully withheld or

unreasonably delayed," 5 U.S.C. § 706(1); *see* FAC ¶ 52.

In moving to dismiss, Defendants argue that the delay in adjudicating

Plaintiff's application is, as a matter of law, not unreasonable, and that the FAC's

allegations fail to state a cognizable claim either (1) for mandamus relief or (2)

under the APA.  (Def. Br. at 3-11).  The Court considers each of Elnaggar's causes of

action, and the parties' competing arguments as to why dismissal is or is not warranted, in turn.

### A. Mandamus Claim

The district courts "have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "To obtain mandamus relief, a plaintiff must show 'that (1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available.'" *Altowaiti v. Wolf*, No. 18 Civ. 508 (ER), 2021 WL 2941753, at *6 (S.D.N.Y. July 12, 2021) (quoting *Benzman v. Whitman*, 523 F.3d 119, 133 (2d Cir. 2008)). "Mandamus relief is a drastic remedy that should be used only in extraordinary circumstances." *Laryea v. Guillod*, No. 24 Civ. 2695 (LTS), 2024 WL 1908315, at *2 (S.D.N.Y. Apr. 29, 2024); *see Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004).

Defendants argue that the first two requirements of mandamus relief are not satisfied because "Elnaggar does not have a clear right, nor does USCIS have a duty, to adjudication [of his I-485 application] within a certain timeframe." (Def. Br. at 4). This argument is well founded. Although 8 U.S.C. § 1571(b) expresses the "sense of Congress" that immigration applications "should" be decided within 180 days, "[t]his provision 'is merely precatory and does not create an enforceable right.'" *Poz v. Mayorkas*, No. 23 Civ. 7902 (DLI), 2024 WL 4309234, at *3 (E.D.N.Y. Sept. 26, 2024) (quoting *Li v. Chertoff*, No. 07 Civ. 3836, 2007 WL 4326784, at *5

(E.D.N.Y. Dec. 7, 2007)); *see also Aydemir v. Garland*, No. 22 Civ. 100 (PAC), 2022 WL 4085846, at *5 (S.D.N.Y. Sept. 6, 2022) ("[A]s many courts have concluded, this precatory statement does not set a deadline by which USCIS *must* adjudicate an application.") (emphasis in original); *Sahan v. Mayorkas*, Civil Action No. 23-21147 (JXN), 2024 WL 4867008, at *2 n.3 (D.N.J. Nov. 22, 2024) (noting that § 1571(b) is "not a statutory command" and does not give rise to a private right of action) (citation and emphasis omitted).

Thus, Elnaggar does not have a "clear and indisputable" right to a decision on his I-485 application within any particular timeframe, *see Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010), nor does USCIS have a "clear nondiscretionary duty" to decide the application within any particular timeframe, *see Heckler v. Ringer*, 466 U.S. 602, 616 (1984). Under such circumstances mandamus will not lie. *See, e.g.*, *Abou Hala v. Chief, Immigrant Inv. Program Off.*, No. 6:23-cv-1541-PGB-DCI, 2024 WL 4188350, at *3 (M.D. Fla. Sept. 23, 2024) (because § 1571(b) "is not a statutorily mandated timeline," plaintiffs seeking to compel USCIS to act on their I-485 applications failed to allege either a clear right to relief or a clear nondiscretionary duty and, accordingly, were not entitled to mandamus relief); *Qi v. USCIS*, No. 23 Civ. 8843 (JLR), 2024 WL 2262661, at *4 (S.D.N.Y. May 17, 2024) (plaintiff failed to state a claim for mandamus relief as INS's 45-day deadline for USCIS to act on asylum applications "is not legally enforceable" and, thus, "Plaintiff ha[d] no 'clear and indisputable' right to a 45-day adjudication of his asylum application that may be enforced against the Government through a writ of mandamus"); *Zheng v.*

*Garland*, No. 22 Civ. 6039 (AMD), 2024 WL 333090, at *4-5 (E.D.N.Y. Jan. 29, 2024) (plaintiff seeking to compel USCIS to act immediately on her asylum application failed to allege either a clear right to relief or a peremptory duty; INA provision requiring action within certain timeframes "does not create a legally enforceable right or benefit" and, thus, "mandamus relief is unavailable"); *Li*, 2007 WL 4326784, at *5 ("Given the historical role of the writ of mandamus as an extraordinary remedy to be applied only in the sound judgment of the court, it is exceedingly unlikely that Congress intended [§ 1571(b)] to implement a mechanical 180-day rule for the processing of applications for immigration benefits, or to give plaintiffs a right to a writ of mandamus in the event that the application is not resolved within that 180-day period.").

Since, as discussed below, the APA affords immigration applicants a remedy for unreasonable delay by the agency, Plaintiff also fails to establish that there is no other adequate remedy except for mandamus.  For this reason as well, Elnaggar's claim for mandamus must be dismissed.  *See, e.g.*, *Zheng*, 2024 WL 333090, at *5 ("Nor has the plaintiff established that there is no other adequate remedy available to compel the defendants to adjudicate her asylum application; to the contrary, she can bring an 'unreasonable delay' claim under the APA[.]"); *Aydemir*, 2022 WL 4085846, at *7 ("[Plaintiff's] mandamus claim fails to meet the third requirement and is therefore dismissed" since "the APA provides [plaintiff] with an 'alternative adequate remedy' for his claim that USCIS has not adjudicated his green card within a reasonable time."); *Xu v. Cissna*, 434 F. Supp. 3d 43, 56 (S.D.N.Y. 2020)

(noting that where "an alternative adequate remedy would be possible under the APA," a mandamus claim "would [not] be necessary" and should be dismissed).

Elnaggar does not seriously dispute the latter point, and in fact acknowledges that "the availability of a writ of mandamus in this case is co-extensive with the availability of relief under 5 U.S.C. § 706(1)" of the APA. (Pl. Br. at 6). Elnaggar does not explain why, if the APA affords him an avenue for relief, it would be proper for him to invoke the remedy of mandamus, which is reserved for extraordinary cases where "no other adequate remedy" is available to the plaintiff. *Benzman*, 523 F.3d at 133.

Elnaggar also argues that because USCIS collects a fee to adjudicate an I-485 application, this "imposes on it a duty to carry out the adjudication." (Pl. Br. at 5). But Defendants do not dispute that USCIS has a statutory duty to adjudicate Elnaggar's application; they argue only that USCIS has no duty to adjudicate his application within a specific period of time. (Def. Br. at 1). Elnaggar does not explain how USCIS's charging of a fee imposes a duty on the agency to adjudicate his application within a particular timeframe or enables him to surmount the hurdles he must clear to plead a cognizable claim for mandamus relief.

Neither of the two out-of-Circuit cases Elnaggar cites supports his mandamus claim. *Kim v. USCIS*, 551 F. Supp. 2d 1258 (D. Colo. 2008), involved the FBI's failure to complete a background check required before USCIS could rule on the plaintiff's immigration application. The court mentioned the plaintiff's payment of an adjudication fee only by way of rejecting the Government's argument that the

FBI's delay was a non-reviewable exercise of discretion over which the court lacked jurisdiction. *Id.* at 1262-64. Defendants do not make such an argument here. In *Kaplan v. Chertoff*, 481 F. Supp. 2d 370 (E.D. Pa. 2007), in the course of sustaining the plaintiffs' claim under the APA (not for mandamus relief), the court similarly relied on plaintiffs' payment of a fee only in holding that the FBI has a duty to complete a background check in a reasonable amount of time. *Id.* at 400-01. Again, Defendants do not dispute that they have a statutory duty to adjudicate Elnaggar's application within a reasonable time.

Accordingly, Elnaggar has failed to state a cognizable claim for relief under the mandamus statute.

## B. APA Claim

"The APA provides for judicial review of an agency action that is 'unreasonably delayed.'" *Altowaiti v. Wolf*, No. 18 Civ. 508 (ER), 2021 WL 2941753, at *5 (S.D.N.Y. July 12, 2021) (citation omitted); *see* 5 U.S.C. § 706(1). "In such circumstances, the Court can compel agency action." *Altowaiti*, 2021 WL 2941753, at *5.

In evaluating a claim of unreasonable delay under the APA, including whether USCIS has unreasonably delayed adjudicating an immigration application, courts in this District apply the factors set forth in *Telecommunications Research and Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"), known as the "*TRAC* factors." *See, e.g.*, *Qi*, 2024 WL 2262661, at *5; *Sheiner*, 2023 WL 2691580, at *5; *Aydemir*, 2022 WL 4085846, at *3; *Xu*, 434 F. Supp. 3d at 51; *see also Nat.*

*Res. Def. Council, Inc. v. Food & Drug Admin.*, 710 F.3d 71, 84 (2d Cir. 2013) (citing *TRAC* as "setting forth test for determining if agency action is unreasonably delayed"). The *TRAC* factors are as follows:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Qi*, 2024 WL 2262661, at *5 (quoting *TRAC*, 750 F.2d at 80).

Although no single factor is dispositive, "'the first and fourth factors generally carry the most weight.'" *Id.* (quoting *Arabzada v. Donis*, 725 F. Supp. 3d 1, 13 (D.D.C. 2024)); *see also Kaur v. Mayorkas*, No. 22 Civ. 4514 (PAE), 2023 WL 4899083, at *12 (S.D.N.Y. Aug. 1, 2023) ("under the case law the first and fourth factors are most important"). The Court analyzes each *TRAC* factor as it applies to Elnaggar's allegations, and then considers all the factors "in the aggregate," *Kaur*, 2023 WL 4899083, at *5, and "holistically," *Qi*, 2024 WL 2262661, at *7.

### 1. First *TRAC* Factor

"'The first *TRAC* factor—whether an agency's time to act is governed by a rule of reason—has been described as the most important.'" *Qi*, 2024 WL 2262661, at *5 (quoting *Kaur*, 2023 WL 4899083, at *6). This factor "'inquires whether there is any rhyme or reason for the Government's delay'—'in other words, whether the

agency's response time is governed by an identifiable rationale.'" *Id.* (quoting *Kaur*, 2023 WL 4899083, at *6).

In discussing the first factor, Defendants do not attempt to identify a "rule of reason" governing the processing of I-485 applications.  They simply argue that the amount of time it has taken to process Elnaggar's application is not inordinate in comparison to the normal processing time.  (*See* Def. Br. at 8).  Other decisions, however, indicate that USCIS applies a "first in, first out" rule to I-485 applications, generally processing them in the order in which they are received.  *Aydemir*, 2022 WL 4085846, at *4; *Liu v. Denayer*, CV 21-6653-DMG (MRWx), 2022 WL 17370527, at *3 (C.D. Cal. July 18, 2022).  Further, Defendants' "line-skipping" argument under the fourth *TRAC* factor—that granting Elnaggar the relief he seeks would "improperly advance his application ahead of thousands of others who filed before him"—implies that USCIS processes I-485 applications according to a "first in, first out" rule.  (Def. Br. at 9-10).  "'Courts widely recognize that a first-in, first-out method counts as a rule of reason' governing an agency's immigration adjudication." *Aydemir*, 2022 WL 4085846, at *4 (quoting *Aljabari v. Mayorkas*, No. 21-CV-6645, 2022 WL 2073047, at *3 (N.D. Ill. June 9, 2022)).

In any event, Elnaggar does not allege that USCIS fails to use *some* rule of reason in processing I-485 applications like his.  Nor does he allege some irregularity or other facts suggesting that USCIS, in processing his application, is failing to follow whatever general methodology it uses in processing like applications.  Elnaggar has thus not plausibly alleged that USCIS's processing of

his application is not governed by a rule of reason for purposes of the first *TRAC* factor.  *See, e.g.*, *Kaur*, 2023 WL 4899083, at *8-9 (finding first *TRAC* factor to weigh in Government's favor where plaintiffs' allegations failed to support a reasonable inference that USCIS was not following its general approach to processing visa applications); *Sheiner*, 2023 WL 2691580, at *7 (same); *Liu*, 2022 WL 17370527, at *4 ("Plaintiff's case would be bolstered by allegations showing that Defendants did not abide by their own first-in-first-out policy.").

Instead, Elnaggar simply argues in conclusory fashion that "Defendants have engaged in unreasonable inaction and delay, failing to adjudicate [his] application[] for over 1 year since the application and counting, with no timeline for completion despite [his] numerous inquiries."  (Pl. Br. at 8).  "But 'the Supreme Court has held that evidence of the passage of time cannot, standing alone, support [a claim for unreasonably delayed administrative action].'"  *Cohen v. Jaddou*, No. 21 Civ. 5025 (PAC), 2023 WL 2526105, at *4 (S.D.N.Y. Mar. 15, 2023) (quoting *Espin v. Gantner*, 381 F. Supp. 2d 261, 266 (S.D.N.Y. 2005) (citing *INS v. Miranda*, 459 U.S. 14, 19 (1982)); *see also Kaur*, 2023 WL 4899083, at *6 ("Whether the agency follows a rule of reason cannot be decided in the abstract, by reference to some number of months or years beyond which agency action is presumed to be unlawful.") (quoting *Saharia v. USCIS*, No. 21 Civ. 3688 (NSR), 2022 WL 3141958, at *4 (S.D.N.Y. Aug. 5, 2022)) (cleaned up).

As Defendants note, courts in this Circuit and elsewhere have found delays much longer than that alleged by Elnaggar here—seven months from the filing of

his I-485 application to the filing of his original Complaint, 11 months to the filing

of his FAC, 12 months to the filing of Defendants' motion to dismiss, and 20 months

to the date of this decision[1]—to be not unreasonable.  (Def. Br. at 8).  As stated in

*Aydemir*, "courts generally conclude that a green card delay of less than four years

is reasonable on its face."  2022 WL 4085846, at  *4; *see id.* at *1 (granting Rule

12(b)(6) motion to dismiss APA claim asserted by asylum-based green card

applicant whose application had been pending for 18 months as of filing of

complaint and 28 months as of the court's decision); *Espin*, 381 F. Supp. 2d at 267

(dismissing claim of unreasonable delay by petitioner whose green card application

had been pending for three years); *Liu*, 2022 WL 17370527, at *4 & n.4 (dismissing

APA claim by plaintiff whose asylum-based green card application had been

pending for 18 months as of filing of complaint and 29 months as of time of decision

and stating that "the length of Plaintiff's delay is simply much shorter than those

which courts have typically found to be unreasonable"); *see also Cohen*, 2023 WL

2526105, at *5 ("[D]istrict courts have generally found that immigration delays in

excess of five, six, seven years are unreasonable, while those between three to five

years are often not unreasonable[.]") (citation omitted); *De Oliveira v. Barr*, No. 19

Civ. 1508 (ENV), 2020 WL 1941231, at *4 (E.D.N.Y. Apr. 22, 2020) ("While some of

the plaintiffs in this case have been waiting as long as three and a half years for

their asylum applications to be processed, courts have held that longer periods are

reasonable under the APA."); *Xu*, 434 F. Supp. 3d at 55 (noting that "the three-year

---

[1] Courts have considered all these metrics in assessing a claim of unreasonable delay in connection with an immigration application.  *See Kaur*, 2023 WL 4899083, at *7 n.7.

delay between the filing of Plaintiff's application and the instant Complaint, while

not insubstantial, is well within the range of time that other courts have found to

not constitute unreasonable delay").[2]

Because Elnaggar does not allege that USCIS's management of I-485

applications fails to follow a rule of reason, or any irregularities in the consideration

of his application, the first *TRAC* factor "strongly favors" Defendants. *Kaur*, 2023

WL 4899083, at *9; *see also Cohen*, 2023 WL 2526105, at *5 ("Thus, without any

adequately alleged irregularities, the Court concludes that USCIS is managing a

---

[2] Relying on case processing statistics on USCIS's website as of May 2024, Defendants argue that 80% of I-485 applications are completed within 32 months and, thus, the amount of time Elnaggar's application has been pending "is well within the range of USCIS's publicly posted processing times for Forms I-485 based on a grant of asylum." (Def. Br. at 6, 8 (citing USCIS, *Check Case Processing Times*, https://egov.uscis.gov/processing-times)). Although Elnaggar does not object to Defendants' making this argument (*see* Pl. Br. at 8), the Court is disinclined to consider it, for two reasons.

First, it is debatable at best whether the Court may properly take judicial notice of the 80% statistic reported on USCIS's website, as Defendants ask it to do. (Def. Br. at 6 n.3). Plainly Defendants are asking the Court to consider this statistic for its truth. But that is generally forbidden on a motion to dismiss. *Lateral Recovery, LLC v. Cap. Merch. Servs., LLC*, 632 F. Supp. 3d 402, 436 (S.D.N.Y. 2022) ("When a court takes judicial notice of a document on a motion to dismiss, it should generally do so only to determine what statements the documents contain[,] not for the truth of the matters asserted.") (cleaned up). While courts have considered similar USCIS processing time statistics on a motion to dismiss where they were incorporated by reference in the plaintiff's complaint, *see Kaur*, 2023 WL 4899083, at *1 n.2, *6, that is not the case here: the First Amended Complaint neither explicitly nor implicitly relies on USCIS processing time statistics. And although Defendants correctly note that the court in *Aydemir* took judicial notice of the processing times on USCIS's website, that case relied solely on *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453 (S.D.N.Y. 2020), which was careful to note that the court took judicial notice of documents on a motion to dismiss *only* for "determining what the documents state" and *not* for "the truth of their contents." *Id.* at 463 (citation omitted); *see Aydemir*, 2022 WL 4085846, at *3 n.3.

Second, even if the Court were to consider the 80% statistic for its truth, its significance on this motion is not readily apparent. It is not an average or a median, and thus does not enable a true comparison of Elnaggar's waiting time with that of a typical asylum-based I-485 applicant. As is clear from the 80% statistic itself, most applications (*i.e.*, more than 50%) are adjudicated within a shorter timeframe than 32 months, possibly much shorter and possibly even less than the 20 months Elnaggar's application has been pending. Without more context, it is impossible to say. Defendants effectively ask the Court to infer from this unclear, unexplained statistic that Elnaggar's application has not been unreasonably delayed. But on a motion to dismiss, "the Court must draw all inferences in Plaintiff's favor," not Defendants'. *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 414 (S.D.N.Y. 2020).

mountain of applications in a manner that follows a rule of reason under the first *TRAC* factor.'") (quoting *Aydemir*, 2022 WL 4085846, at *4).

### 2. Second *TRAC* Factor

The second *TRAC* factor looks to whether Congress "has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute." *TRAC*, 750 F.2d at 80. Clearly, Congress has done so here. Section 1571(b) of the INA explicitly sets forth Congress's view that "the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). To be sure, as discussed above, this statement is merely precatory and nonbinding and does not establish a deadline by which an I-485 application must be adjudicated. *See* discussion *supra* at 7-9. But that does not mean that the second *TRAC* factor favors the Government, as Defendants incorrectly contend. (*See* Def. Br. at 8-9.) To the contrary, since Elnaggar's application has been pending well beyond the six-month timeframe in Section 1571(b), this factor favors Plaintiff. *See, e.g.*, *Kaur*, 2023 WL 4899083, at *9; *Sheiner*, 2023 WL 2691580, at *8. Nonetheless, it is case law, not Section 1571(b), that "determine[s] when an agency's adjudicatory timeline becomes unreasonable." *Aydemir*, 2022 WL 4085846, at *5.

### 3. Third and Fifth *TRAC* Factors

"'Courts analyze *TRAC* factors three and five together, looking to the possible effects a delay has had on a plaintiff's health and welfare and to the nature and extent of the interests prejudiced by the delay.'" *Qi*, 2024 WL 2262661, at *6

(quoting *Arabzada*, 725 F. Supp. 3d at 16); *see also Cohen*, 2023 WL 2526105, at *5

n.7 ("'Courts generally analyze the third and fifth [*TRAC*] factors together.'")

(quoting *Boussana v. Johnson*, No. 14 Civ. 3757 (LGS), 2015 WL 3651329, at *9

(S.D.N.Y. June 11, 2015)). "'[A]nalysis of the third and fifth *TRAC* factors requires

careful consideration and weighing of the circumstances of a case.'" *Kaur*, 2023 WL

4899083, at *9 (quoting *Lyons v. USCIS*, No. 21 Civ. 3661 (JGK), 2023 WL 144879,

at *8 (S.D.N.Y. Jan. 10, 2023)).

Elnaggar alleges two forms of prejudice caused by USCIS's delay in

adjudicating his green card application.  First, Elnaggar contends he is suffering

potentially irreparable injury to his career opportunities because he may be unable

to enlist in the U.S. Navy.  (Pl. Br. at 1-2; *see* FAC ¶¶ 6-8, 46).  But as Defendants

point out, the premise underlying this contention is incorrect.  (Def. Br. at 2 & n.2).

Although the FAC alleges Elnaggar would be barred from enlisting in the Navy

after he turns 39 (FAC ¶ 7), in fact the Navy's website states that the maximum age

for enlistment is 41.  *See* America's Navy, *Requirements to Join*,

https://www.navy.com/joining/requirements (last visited Jan. 7, 2025).  Thus, it

appears Elnaggar could enlist any time before he turns 42, which will not be until

August 15, 2027.  (Def. Br. at 2 n.2).

In his opposition brief, Elnaggar acknowledges that the Navy updated its

rules to raise the maximum age for enlistment, although he claims this did not

happen until after the filing of his Complaint.[3]  (Pl. Br. at 2).  Nonetheless, he

---

[3] Defendants dispute that claim, stating that the 41-year-old maximum age policy has been in place
since at least November 2022.  (Reply at 3 n.1).

continues to insist that "in a year's time, [he] will have passed the age cutoff to join the Navy." (*Id.*). This is simply not so, however. Elnaggar was born on August 15, 1985. (FAC ¶ 7 & Ex. B). Thus, as Defendants state, Elnaggar will turn 42, and then be ineligible to join the Navy, in 2027, not in 2025.

Even if Elnaggar had been on the precipice of ineligibility when he filed his Complaint or the FAC, that would not give him a strong claim of prejudice. It is commendable that Elnaggar would like to serve in the U.S. military, and the Court hopes he will have the opportunity to do so before he reaches the cutoff age. But if he were unable to do so because he turned 39, that would be because he did not come to the United States until later in life and did not apply for lawful permanent residence status until he was nearly 38—not because of any unreasonable delay by USCIS. *See Aydemir*, 2022 WL 4085846, at *5 ("Even reading the Petition in the light most favorable to Aydemir—and therefore assuming he cannot find work as a medical professional without a green card—that is the 'sort of prejudice [that] is inherent in the [] application process; worthy applicants are not entitled to benefits until their applications have been assessed and approved.'") (quoting *Xu*, 434 F. Supp. 3d at 54).

"In the meantime, [Elnaggar] continues to enjoy asylum status and remains safely in the United States." *Id.* He does not claim he is unable to find employment in this country. Although he argues that it is in the national interest for him to be able to join the U.S. Navy (FAC ¶ 6), a similar argument was rejected in *Aydemir*, where the plaintiff claimed it would be in the public interest for him to resume his

career as a medical professional.  Giving "special weight" to the plaintiff's chosen profession, the court explained, "would have the effect of prioritizing green cards for medical professionals generally.  [Plaintiff] has identified no such priority under the current USCIS regime, and the Court will not substitute its priorities for the agency's own."  *Aydemir*, 2022 WL 4085846, at *6.

Second, Elnaggar contends USCIS's delay in adjudicating his application is "preventing [him] from being able to spend what little time he has left" with his mother, who is ill with cancer in Morocco, and is also "preventing him from reuniting with his family in Morocco."  (Pl. Br. at 1-2; *see* FAC ¶ 4).  But Elnaggar was approved for a travel visa in March 2024 (Dkt. No. 13 Ex. 1), and he does not explain why he is unable to travel to Morocco to visit family while his green card application is pending.  Even if Elnaggar had been "greatly inconvenienced in travel for business and personal reasons due to his immigration status," that circumstance would "not warrant action by the Court to mandate early adjudication of his application for adjustment of status."  *Saleh v. Ridge*, 367 F. Supp. 2d 508, 513 (S.D.N.Y. 2005); *see also Cohen*, 2023 WL 2526105, at *5 (finding plaintiff's frustration with his travel restrictions "insufficient" to warrant relief).

Thus, the alleged prejudice to Elnaggar's interests in employment and travel resulting from USCIS's weighs only slightly in his favor.  *See Kaur*, 2023 WL 4899083, at *11 (finding that plaintiffs' allegations that they had "experienced extended instability in their professional and personal lives as a result of USCIS's delay in adjudicating" their petitions "tips the third and fifth factors in plaintiffs'

favor, albeit to only a slight degree"); *Aydemir*, 2022 WL 4085846, at *5 ("The prejudice resulting from delay also weighs slightly in [plaintiff's] favor but is ultimately insufficient to grant relief.").

### 4. Fourth *TRAC* Factor

"The fourth *TRAC* factor considers 'the effect of expediting delayed action on agency activities of a higher or competing priority.'" *Kaur*, 2023 WL 4899083, at *11 (quoting *TRAC*, 750 F.2d at 80). Defendants argue that granting Elnaggar the relief he seeks would "serve only to improperly advance his application ahead of thousands of others who filed before him" and "encourage the expectation that applicants who file a lawsuit will obtain preferential treatment in the adjudication process (thus potentially leading to an increase in similar litigation)." (Def. Br. at 9-10). The Court finds this argument persuasive.

Numerous cases have expressed concern that in ordering expedited treatment for an immigration application, the court would be inappropriately allowing the plaintiff to leapfrog over other similarly situated applicants who applied earlier. *See, e.g.*, *Qi*, 2024 WL 2262661, at *6 ("'[T]he effect of leapfrogging Plaintiff's application to the front of the line would do nothing to cure the deficiencies of the asylum application process; it would only harm other applicants, who are equally deserving of prompt adjudication[.]'") (quoting *Chen v. Wolf*, No. 19 Civ. 9951 (AJN), 2020 WL 6825681, at *6 (S.D.N.Y. Nov. 20, 2020)); *Konde v. Raufer*, No. 23 Civ. 4265 (JPC), 2024 WL 2221227, at *4 (S.D.N.Y. May 16, 2024) (agreeing that "judicial intervention in this case would result in both unwarranted 'line-skipping'

and preferential treatment for those with the means to hire counsel" and finding "no basis to single out Plaintiff's case for expedited resolution, where so many are deserving of prompt adjudication"); *Aydemir*, 2022 WL 4085846, at *6 ("[A] judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain[.]") (citation omitted); *Gong v. Duke*, 282 F. Supp. 3d 566, 569 (E.D.N.Y. 2017) ("There are many other applicants who have waited even longer than plaintiff; to grant him priority is to push them further back in line when the only difference between them is that plaintiff has brought a federal lawsuit. That factor should not give him any advantage.").

Of course, this concern cannot be given talismanic weight; virtually any time a court orders an agency to speed up its consideration of a particular plaintiff's application, it will enable that plaintiff to "skip the line" to a degree. Circumstances can exist where granting relief is warranted despite that effect. But such circumstances are not adequately alleged here. Elnagger filed this suit only seven months after filing his I-485 application and alleges no irregularities in his application process or need for immediate action that would justify bumping him ahead of other applicants in the USCIS queue.

"Accordingly, because granting an order to compel adjudication of [Elnaggar's] application[] would divert agency resources from other presumably qualified applicants, the Court, like others facing similar claims, finds the fourth factor to favor dismissing the [First Amended] Complaint." *Kaur*, 2023 WL

4899083, at *11; *see also Aydemir*, 2022 WL 4085846, at *6 ("This factor weighs heavily in favor dismissal.").

### 5. Sixth *TRAC* Factor

The sixth factor makes clear that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80 (cleaned up). This factor "'intersects with [factor] four's sensitivity to the agency's legitimate priorities,' because where 'the agency has manifested bad faith, as by singling someone out for bad treatment or asserting utter indifference to a congressional deadline, the agency will have a hard time claiming legitimacy for its priorities.'" *Kaur*, 2023 WL 4899083, at *12 (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991)). Here, Elnaggar does not plausibly allege any impropriety on the part of USCIS or claim he was singled out for special, adverse treatment. Accordingly, this factor is neutral. *Id.*; *Aydemir*, 2022 WL 4085846, at *6.

*      *      *

Considering the *TRAC* factors in the aggregate and holistically, the Court concludes that Elnaggar has failed to plausibly allege a claim for unreasonable delay under the APA. The first and fourth factors—the two most important—weigh heavily in favor of dismissal. The other factors only modestly favor Elnaggar or are neutral. Elnaggar's allegations of prejudice are insufficient to anchor a viable unreasonable delay claim given the strength of the factors favoring dismissal and the relatively limited amount of time Elnaggar's application has been pending. In

essence, Elnaggar's claim rests on USCIS's failure to adjudicate his application within the 180-day period referred to in 8 U.S.C. § 1571(b).  But that fact standing alone does not justify judicial action overriding the agency process where Elnaggar's application is pending and properly belongs.  *See Aydemir*, 2022 WL 4085846, at *5 (§ 1571(b)'s timeline "does not transform every immigration benefit application which has been pending for longer than six months into a violation of the APA").

Elnaggar's opposition brief does not seriously dispute Defendants' analysis of the *TRAC* factors or present a competing analysis.  (*See* Pl. Br. at 6-9).  Rather, Elnaggar argues that "unreasonable delay claims require fact-based inquiries not suitable for disposition at this stage of litigation."  (*Id*. at 8).  But an abundance of authority in this District rejects that general proposition and finds that where, as here, the complaint does not plausibly plead facts to support a claim for unreasonable delay, the claim should be dismissed on the pleadings as a matter of law.  *See, e.g.*, *Kaur*, 2023 WL 4899083, at *5 n.6 ("adopt[ing] the approach taken by other courts and consider[ing] the *TRAC* factors on this motion [to dismiss]"); *Sheiner*, 2023 WL 2691580, at *5 n.12 ("The weight of authority appears to cut in favor of deciding unreasonable-delay claims at the motion-to-dismiss stage before discovery.") (cleaned up); *Aydemir*, 2022 WL 4085846, at *3-6 & n.2 (granting motion to dismiss unreasonable delay claim brought by asylum-based green card applicant).

Similarly, Elnaggar's contention that "there is insufficient information" to conclude that he will be "unable to prove any set of facts which would entitle [him]

to relief" (Pl. Br. at 9) misstates the applicable pleading standard.  In *Twombly* and *Iqbal*, the Supreme Court jettisoned the prior rule set forth in *Conley v. Gibson*, 355 U.S. 41 (1957), that allowed a complaint to survive "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Id*. at 45-46; *see Iqbal*, 556 U.S. at 670 (noting that "*Twombly* retired the *Conley* no-set-of-facts test").  Under the *Twombly*/*Iqbal* pleading standard, it is the plaintiff's burden to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also id*. at 678-79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

Mindful that its role on a motion to dismiss is not to determine whether there has been an unreasonable delay, the Court still must "determin[e] whether [plaintiff's] complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay."  *Kaur*, 2023 WL 4899083, at *5 n.6.  For the reasons set forth above, the Court has determined that the First Amended Complaint does not do so.  Accordingly, "in line with the vast majority of courts faced with cases from similarly situated plaintiffs," *id*. at *12, the Court dismisses Elnaggar's APA claim.

25

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is **GRANTED**.

The Clerk is respectfully requested to close the pending motion at Docket No. 18

and to close this case.

**SO ORDERED.**

DATED:    January 10, 2025
New York, New York

_____
The Honorable Gary Stein
United States Magistrate Judge